# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:90-cr-85-MOC

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| GARY DAVIS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Defendant Gary Davis's Motion for Compassionate Release/Reduction of Sentence. (Doc. Nos. 233, 240, 273). Davis is represented by Joshua Carpenter of the Federal Defenders of Western North Carolina, Inc. The Government has responded in opposition to the motion.

This Court is presented with a petition seeking relief from a long sentence of incarceration. To be clear, this is not a case where someone was wrongfully accused and convicted. Nor does it involve an unfair sentence. Defendant was part of a violent street gang that distributed drugs, shot people, intimidated citizens, and tried to bribe a juror. They went to trial and showed no remorse. The sentences given were lawful and the 18 U.S.C. § 924(c) charges were made consecutive according to the law at the time. Defendant and his coconspirators have served over thirty years. Normally that would be the end of the matter. But changes to the law allow this Court to review the motion for compassionate release, based upon a number of factors, to decide whether these defendants should be released at this time. The Court will do its analysis below. However, granting relief today in no way criticizes the original prosecution and sentencing.

-1-

I. BACKGROUND

A. Defendant's Conviction and Sentence Based on Stacking of Section 924(c) Offenses

Between 1998 and 1990, Davis participated in a highly disciplined and violent drug-trafficking organization in Charlotte, North Carolina. (WDNC Case No. 3:90CR85, Doc. No. 194 at ¶ 5). Members of the conspiracy sold crack cocaine and used and carried assault rifles, shotguns, Uzis, and destructive devices and developed a reputation for violence. (Id.). On two occasions during Davis's participation in the conspiracy, he and some of his codefendants used and carried firearms during and in relation to the conspiracy offense. (Id. at ¶ 7).

When Davis committed these offenses, he had previously been convicted of voluntary manslaughter and possessing a firearm as a convicted felon. (Id. at ¶¶ 21–21). He was 21 years old when he was arrested. (Id. at p. 1). A federal grand jury indicted Davis and charged him with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine, 21 U.S.C. §§ 841(a)(1), 846; and three counts of using and carrying a firearm during and in relation to the drug-trafficking conspiracy offense and aiding and abetting the same, 18 U.S.C. §§ 2, 924(c). (WDNC Case No. 3:15CV106, Doc. No. 27-1 at 1–7, 10, 15).

All of Davis's Section 924(c) firearm offenses were related to the drug-trafficking conspiracy offense. (Id. at 10, 15). The grand jury charged that Davis and Cecil Edward Jackson, one of the conspiracy's leaders, shot a man to enforce a drug debt in October of 1989 and that Davis and Jackson and five other members of the conspiracy shot rival drug dealers in January of 1990. (Id. at 4–5). One of the Section 924(c) charges related to the October 1989 shooting; two of the Section 924(c) charges related to the January 1990 shooting. (See id. at 10, 15).

Davis's case was tried by a jury, and the jury found Davis guilty of all charged offenses. (Id., Davis Judgment at 1). This Court's probation office submitted a presentence report and determined that the Sentencing Guidelines called for a sentence of between 360 months in prison, based on a total offense level of 42 and a criminal history category of IV. (Id., Doc. No. 194 at ¶ 28). The probation office grouped the Section 924(c) firearm offenses based on date, resulting in one mandatory consecutive term of 5 years in prison and one mandatory consecutive term of 20 years in prison. (Id. at ¶¶ 29–32). This Court sentenced Davis to 360 months in prison for the drug-trafficking conspiracy and to a consecutive term of 300 months in prison for the section 924(c) offenses, for an aggregate sentence of 660 months. (Id., Davis Judgment at 2; id., Doc. No. 166 at 2).

**B. Legal Changes Regarding Stacking of Section 924(c) Offenses**

When Davis was sentenced, the law allowed the government to charge defendants with multiple violations of Section 924(c) based on a single underlying conspiracy offense. In addition, if convicted of multiple Section 924(c) counts that were charged in a single indictment, the sentencing court was required to sentence the defendant to five years' imprisonment for the first conviction, and then sentence the defendant to twenty years' imprisonment for each subsequent conviction, all of which were required to run consecutive to one another.

Beginning in the late-1980s and throughout the 1990s, Circuit Courts of Appeal around the country examined the first stacking issue mentioned in the above paragraph (charging multiple Section 924(c) violations based on a single underlying offense). The majority of Circuit Courts of Appeal that addressed the issue held that separate Section 924(c) charges must be based on separate predicate offenses; i.e., multiple Section 924(c) counts could not be based on a

single drug conspiracy charge. See, e.g., United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc); United States v. Lindsay, 985 F.2d 666, 672 (2d Cir. 1993); United States v. Privette, 947 F.2d 1259, 1262–63 (5th Cir. 1991); United States v. Sims, 975 F.2d 1225, 1233–36 (6th Cir. 1992); United States v. Cappas, 29 F.3d 1187, 89 (7th Cir. 1994); United States v. Fontanilla, 849 F.2d 1257, 1258–59 (9th Cir. 1988); United States v. Moore, 958 F.2d 310, 312–14 (10th Cir. 1992); and United States v. Hamilton, 953 F.2d 1344, 1346 (11th Cir. 1992). The Fourth Circuit was in the minority of circuits that adopted the contrary approach. See United States v. Camps, 32 F.3d 102 (4th Cir. 1994); see also United States v. Edwards, 994 F.2d 417, 423-24 (8th Cir. 1993).

While the Supreme Court did not address the circuit split, the Department of Justice did. In 1999, James K. Robinson, who was Assistant Attorney General at the time, issued a memorandum (the Robinson Memorandum) instructing United States Attorney's Offices to follow the majority approach and base each separate Section 924(c) count upon a separate predicate offense. Davis did not receive the benefit of this adjusted practice.

### C. This Court's Subsequent Reduction of Davis's Sentence under the Sentence Guideline Amendments

This Court reduced Davis's drug-trafficking sentence under Amendments 706 and 782 to the Sentencing Guidelines, and he is now serving a sentence of 268 months in prison for the drug-trafficking offense and a consecutive 300 months for the Section 924(c) firearm offenses, for an aggregate term of 568 months in prison. (Id., Doc. No. 166 at 2; id., Doc. No. 178). When this Court reduced Davis's sentence under Amendment 782, Davis had incurred 18 disciplinary citations, including six citations for assaulting without serious injury, three citations for fighting,

and a citation for possessing a dangerous weapon. (Id., Doc. No. 166 at 3). Davis's most recent citations were for fighting with another person and possessing a dangerous weapon, infractions Davis committed at the same time in January of 2014. (Id.).

In granting Davis's request for a reduced sentence, but declining to reduce Davis's sentence to the bottom of the range advised by the Sentencing Guidelines, this Court noted that Davis had completed "minimal" work and educational programs and advised Davis "to avoid further misconduct and to participate in educational work programs." (Id., Doc. No. 178 at 1). The Court noted that Davis might be eligible for a further reduction in the future and that courts are permitted to consider a defendant's institutional adjustment in deciding whether to grant such discretionary reductions. (Id.).

Since the Court's admonishment in 2016, Davis has behaved well in prison, incurring only one additional infraction in September of 2020, when he gave or accepted money without authorization. (Id., Doc. No. 273-1: Def. Ex.1). Moreover, since February of 2016, Davis has completed 7 additional educational and work programs, which includes earning a GED. (Id.). Davis is currently incarcerated at Coleman Federal Correctional Institution Low. The probation office reports that Davis has 388 months of credited time in the Bureau of Prisons ("BOP"). He is now 52-years-old and his current projected release date is 2033.

### D. Pending Motion for Compassionate Release

In April of 2020, Davis submitted a request for compassionate release from the BOP. (Doc. No. 276-1: Gov't Ex. 1). The warden of Davis's BOP facility denied Davis's request for compassionate release. (Id.). Davis now asks this Court to grant him compassionate release. Although Davis has filed pro se motions seeking a reduced sentence under section 404 of the

First Step Act, see id., he withdraws that basis for relief in his most recent and counseled memorandum supporting his request for compassionate release, id., Doc. No. 273 at 7–8.

## II.     DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended Section 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

Before the First Step Act was enacted, the Sentencing Commission issued a policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A). The policy statement, found in U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the Court finds that (i)

"extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." The application note also sets out various conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances.[1] U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

In December 2020, the Fourth Circuit Court of Appeals held in United States v. McCoy that the policy statement is not binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. 981 F.3d 271 (4th Cir. 2020). Specifically, the McKoy court held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy court reasoned that, because Section 1B1.13 applies only to motions brought by the BOP, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own

---

[1] These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B) Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284.

The First Step Act also amended 18 U.S.C. § 924(c), removing the possibility that a defendant will receive "stacked" Section 924(c) sentences by requiring that the 25-year mandatory-minimum sentence that applies for a second or successive Section 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already "has become final." First Step Act § 403(a), 132 Stat. at 5222. That change does not apply retroactively to sentences that were imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The McCoy court reasoned that "the First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one" that made stacked Section 924(c) sentences, such as the aggregate sentence that Davis is now serving, significantly longer "'than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct.'" Id. (quoting United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)). With regard to cases involving pre-First Step Act stacked Section 924(c) sentences, the court noted "two distinct features" of such sentences that warranted the application of the "extraordinary and compelling reasons" standard: (1) the "sheer and unusual length of the sentences[,]" and (2) the "gross disparity between those

sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." Id. The Court ultimately affirmed the reductions to four defendants' sentences under the First Step Act. Each defendant had received a lengthy sentence due to having multiple Section 924(c) sentences stacked before the enactment of the First Step Act. Those sentences would have been considerably less severe had they been sentenced after the First Step Act was enacted.

Following Mckoy, it is clear that the court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the BOP, the defendant's prior criminal history, and the defendant's age when he committed his offenses. See id. It also clear, after McKoy, that although the policy statement found in U.S.S.G. § 1B1.13 remains useful guidance in considering motions for compassionate release, a court has the discretion to consider other facts that may constitute "extraordinary and compelling reasons," including that the particular defendant was given stacked sentences under Section 924(c).

Davis asks this Court to exercise its discretion to grant him compassionate release because he is serving stacked 20-year sentences for section 924(c) firearm offenses all of which have a single predicate offense—the drug-trafficking-conspiracy offense for which Davis was convicted. Were section 403 of the First Step Act in effect when Davis was sentenced, he would have received a sentence of no more than 5 years in prison for each of his grouped section 924(c) sentences, for an aggregate consecutive term of 120 months. Additionally, as Davis notes, the Department of Justice agreed more than 20 years ago not to seek separate Section 924(c)

convictions based on a single predicate offense. Had that policy been in effect when Davis was indicted, he would have been charged with and convicted of, at most, one section 924(c) offense, resulting in a five-year consecutive sentence. Combined with the 268-month sentence Davis is currently serving for his drug-trafficking offense, this five-year consecutive sentence results in an aggregate sentence of 328 months in prison. Davis was only 21 years old when he was arrested for these offenses, and he had only two prior felony convictions.

The Court finds that, for the same reasons the sentence reductions were appropriate for the defendants in McCoy, a sentence reduction is appropriate, and warranted, for Davis. First, it is clear that, if it were not for the stacking in this case, Davis would be released from prison by now. The Court further finds that Davis has presented significant evidence of post-sentencing rehabilitation. As noted above, Davis responded well after this Court admonished him in 2016 about the negative impact of continued disciplinary infractions within BOP. Since that admonishment, Davis has incurred only one infraction in more than five years, and it was for the minor offense of giving or accepting money without authorization. See (Doc. No. 273-1: Def. Ex. 1). Davis has not incurred any violent offenses since an infraction for fighting in 2014, and his most recent assault infraction occurred in 2012. See (Doc. No. 166 (Supp. PSR), at 3).

In addition to his improved behavior, Davis has also taken positive steps to prepare himself for his eventual release. He successfully earned his GED while incarcerated and has worked a variety of prison jobs that should give him valuable experience for obtaining employment upon release. See (Doc. No. 173-1: Def. Ex. 1 (noting completion of GED, along with six other educational programs and work assignments); Doc. No. 166 (Supp. PSR), at 3 (documenting completion of approximately 28 educational programs and work assignments). A

2019 report from BOP provides additional evidence of Davis's rehabilitation, noting that he receives "satisfactory or better work performance ratings" and that, based on his good behavior, he is now classified as "low security level inmate." See (Doc. No. 273-3: Def. Ex. 3).

The Court further finds that, despite his lengthy time in prison, Davis has maintained ties with a strong support network that will assist in his re-entry into the community. Family and friends have submitted letters of support. See (Doc. No. 273-4: Def. Ex. 4). The letters show that Davis's family has stuck with him even though he has been incarcerated for more than 30 years since he was just 20 years old. Several of the family members speak sincerely about the changes and maturity they have seen from Davis over the years, with his father and brother in particular noting how Davis is focused on the future and on showing the community that he has changed.

The Court further finds as compelling the fact that Davis has provided the Court with a solid plan for his re-entry into society. Davis plans to reside with his wife, Olga Davis, in Jacksonville, Florida, where she has a stable job and residence. His step-son, Juan Maldonado, has a lead on potential employment for Davis in a warehouse position for a manufacturing company. Taken together, the letters submitted on Davis's behalf show that Davis will have a strong support system available for him upon release.

In sum, under the First Step Act, Section 924(c) convictions can no longer be stacked to create excessive sentences like the one imposed in this case. That fact, coupled with Davis's youth at the time of the offenses, his recent record of rehabilitation, and his strong community support, Davis meets the "extraordinary and compelling" standard under Fourth Circuit's decision in McCoy. This Court therefore grants Defendant's motion compassionate release and sentences him to time-served.

**ORDER**

**(1) IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release (Doc. Nos. 233, 240, 273) is **GRANTED**, and the Court hereby orders that Defendant's term of imprisonment is reduced to **TIME SERVED**.

**(2) IT IS FURTHER ORDERED** that, upon release from imprisonment, Defendant shall be placed on supervised release for a term of five years. While on supervised release, Defendant shall not commit another federal, state, or local crime and shall comply with the standard conditions that have been adopted by this Court, which the Court has reviewed, and which the Court finds are appropriate.

**(3) IT IS FURTHER ORDERED** that Defendant shall not contact any of the witnesses from his underlying criminal case, or the witnesses' families, without the specific approval from his probation officer.

**(4)** Defendant is therefore **ORDERED** released from the custody of the United States Bureau of Prisons and/or the custody of the U.S. Marshals Service. To allow the Bureau of Prisons/United States Marshal/Pretrial Service adequate time, such are allowed up to ten days to comply with this order.

**(5)** The Clerk of Court shall certify copies of this Order to the U.S. Bureau of Prisons, U.S. Marshals Service, and the U.S. Probation and Pretrial Services Office.

**(6) The Clerk's office is hereby instructed to terminate Defendant's various pro se Motions, (Doc. Nos. 228, 238) filed under the First Step Act as withdrawn.**

.

Signed: June 1, 2021

Max O. Cogburn Jr
United States District Judge